IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FRANK R. WOJCIK,

        Plaintiff,

        v.                          Civil Action No. 2:10-CV-135

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.


**REPORT AND RECOMMENDATION
CLAIMANT'S MOTION FOR SUMMARY JUDGMENT BE DENIED**

**I.  Introduction**

A.      <u>Background</u>

      Plaintiff, Frank R. Wojcik (hereinafter "Claimant"), filed his Complaint on December 6, 2010 seeking judicial review pursuant to 42 U.S.C. § 405(g) of an adverse decision by Defendant, Commissioner of Social Security, (hereinafter "Commissioner").[1] Commissioner filed his Answer on March 30, 2011.[2] Claimant filed his Motion for Summary Judgment on April 29, 2011.[3] Commissioner filed his Motion for Summary Judgment on May 17, 2011.[4]

B.      <u>The Pleadings</u>

      1.      <u>Plaintiff's Motion for Summary Judgment & Memorandum in Support</u>.

---

[1] Dkt. No. 1.

[2] Dkt. No. 8.

[3] Dkt. No. 11.

[4] Dkt. No. 12.

2.	Defendant's Motion for Summary Judgment & Memorandum in Support.

C.	Recommendation

1.	Claimant's Motion for Summary Judgment be **DENIED** because the ALJ

properly evaluated the treating physician's reports and correctly assessed Claimant's credibility.

2.	Commissioner's Motion for Summary Judgment be **GRANTED** for the same

reasons.

## II. Facts

A.	Procedural History

Claimant filed an application for Disability Insurance Benefits ("DIB") on April 17,

1992, alleging a disabling condition with an onset date of March 27, 1992. (Tr. 67).  The

application was initially denied, however, in a decision issued by the Appeals Council on June 9,

1999, Claimant was found disabled as of April 15, 1993. (Tr. 21).  On February 27, 2008, it was

determined Claimant was no longer disabled as of February 1, 2008. (Tr. 21).  Upon

consideration by the Disability Hearing Officer, the decision was upheld. (Tr. 21).  Claimant

filed a timely written request for a hearing before an Administrative Law Judge (hereinafter

"ALJ") and received a hearing on August 18, 2009 in Wheeling, West Virginia.. (Tr. 21, 680).

On September 23, 2009, the ALJ issued a decision unfavorable to Clamant finding that

Claimant's disability ended as of February 1, 2008. (Tr. 21).  Claimant requested review of the

ALJ's decision by the Appeals Council on September 24, 2007 but such review was denied on

October 8, 2010. (Tr. 10, 16).  Claimant filed this action, which proceeded as set forth above,

having exhausted his administrative remedies.

B.     Personal History

Claimant was born on December 11, 1969, and was thirty-five (35) years old on the onset date of the alleged disability and thirty-nine (39) years old as of the date of the ALJ's decision. (Tr. 177). Under the regulations, Claimant was considered a "younger individual" under the regulations, and generally, one whose age will not "seriously affect [Claimant's] ability to adjust to other work." 20 C.F.R. §§ 404.15639(c), 416.963(c). Claimant has a high school diploma and has a business college degree in computer technology (Tr. 207). Claimant has prior work experience as a bakery worker, maid, and auto auction driver. (Tr. 200).

C.     Medical History

An echocardiogram was performed on Claimant on December 12, 2006. (Tr. 616). The conclusions were as follows: 1) normal left ventricular size and function, wall motion abnormalities as noted; 2) mild left ventricular diastolic dysfunction; 3) normal right ventricular size and function; 4) moderate left atrial dilatation; 5) mild right atrial dilatation; 6) normal mitral valve, no mitral regurgitation; 7) aortic valve homograft, no aortic insufficiency; 8) normal tricuspid valve, mild tricuspid regurgitation; 9) normal pulmonic valve, no pulmonary insufficiency; and no pericardial effusion. (Tr. 617).

On December 19, 2006, Claimant was examined by Dr. James L. Comerci for a regularly scheduled appointment. (Tr. 636). Claimant's chief complaint was that his heart skips beats once in a while. (Tr. 636). Upon exam, Claimant's heart rate was ok, and Claimant denied chest pain, shortness of breath, dyspnea on exertion, pedal edema or headache. (Tr. 636). Claimant's heart had a regular rhythm, regular rate, no murmurs, rubs or gallops. (Tr. 637).

On April 24, 2007, Claimant was examined by Dr. James L. Comerci for a check up. (Tr.

632).  Patient denied any chest pain, shortness of breath, dyspnea on exertion, pedal edema, or headache.  (Tr. 632).  Claimant's aortic insufficiency is stable and Claimant again denied having any chest pain, dyspnea on exertion, orthopnea, PND, pedal edema, shortness of breath, recent episodes worsening tachycardia.  (Tr. 632).  Claimant predominantly exercises by walking 2-3 times per week.  (Tr. 632).  Claimant was noted to be a "healthy appearing individual in no distress."  (Tr. 633).  Claimant had a regular rhythm, regular rate with no murmurs, rubs, or gallops.  (Tr. 633).  Claimant's aortic insufficiency remained stable.  (Tr. 634).

On May 10, 2007, Claimant was seen at Hillcrest Behavioral Services.  Claimant stated he did not want to take Ambien for the duration of his life but said that the prescription was "helping" and it "has been doing very well" for Claimant.  (Tr. 579).  Claimant stated that he saw his cardiologist and had an EKG performed.  (Tr. 579).  Claimant indicated "the points [were] low" and that Claimant "needs something to make his heart pump stronger."  (Tr. 579).  The physician noted "[Claimant] has been working and he is doing very well."  (Tr. 579).

On August 28, 2007, Claimant was examined by Dr. James L. Comerci.  (Tr. 628).  Claimant presented with "mild difficulty sleeping" but Dr. Comerci noted Claimant stated the Ambien helps on occasion.  (Tr. 628).  Claimant denied any chest pain, shortness of breath, dyspnea on exertion, pedal edema or headache.  (Tr. 628).  Claimant's blood pressure readings taken outside the office since the last visit have been in the target range.  (Tr. 628).  Claimant aortic insufficiency remained stable.  (Tr. 631).

On September 6, 2007, Claimant was seen at Hillcrest Behavioral Services.  Claimant talked about his anxiety his worries.  The physician discussed using antidepressants but Claimant was "very reluctant."  (Tr. 578).  Claimant was noted to have "intact short term and long term

memory," "fair judgment and abstract thinking" but fair "insight." (Tr. 578).

On November 18, 2007, Claimant was seen by Dr. Chiu for a follow up appointment. Dr. Chiu noted that Claimant "denied any significant complaints," and that Claimant "stated he was feeling well." (Tr. 614). Claimant denied any chest pain, tightness, pressure, shortness of breath, orthopnea and paroxysmal nocturnal dyspnea. (Tr. 614). Dr. Chiu found no significant palpitations, heart racing or skipped beats. Claimant stated, however, that "when he was under stress, or if he had not slept well, he would have quite a few skipped beats." (Tr. 614). Dr. Chiu found Claimant's chest was clear, with bilaterally equal breath sounds. (Tr. 615). Dr. Chiu found no evidence of heart failure clinically and that the permanent pacemaker was functioning properly. (Tr. 615).

On December 18, 2007, Claimant was examined by Dr. James L. Comerci for a four month check up. (Tr. 624). Claimant did not have any complaints. (Tr. 624). Claimant stated he had difficulty sleeping without Ambien but otherwise "feels well." (Tr. 624). A review of Claimant's cardiac system revealed "no chest pain, palpitations, tachyarrhythmia, orthopnea, dyspnea on exertion, or paroxysmal nocturnal dyspnea. (Tr. 624). Claimant's heart had a regular rhythm, regular rate, no murmurs, rubs or gallops. (Tr. 625).

On February 25, 2008, Claimant underwent a residual physical functional capacity assessment. Claimant's exertional limitations were as follows: 1) can occasionally lift and/or carry (including upward pulling) a maximum of 20 pounds; 2) can frequently lift and/or carry (including upward pulling) a maximum of 10 pounds; 3) can stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; 4) can sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; 5) can push and/or pull (including operation of hand

and/or foot controls) without limits, other than as shown for lift and/or carry. (Tr. 584).

Claimant's postural limitations are as follows: 1) can occasionally- climb ramps/stairs/ladders/ropes/scaffolds, balance, stoop, kneel, crouch and crawl. No manipulative, visual or communicative limitations were established. (Tr. 586). Claimant's environmental limitations are as follows: 1) can have unlimited exposure to wetness, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation; 2) should avoid concentrated exposure to extreme cold or heat and hazards. (Tr. 587). Claimant was noted to be credible. (Tr. 588).

On February 26, 2008, Dr. Bob Marinelli performed a psychiatric review technique of Claimant. (Tr. 591). Dr. Marinelli found Claimant's impairments to be not severe, however, Claimant did suffer from anxiety that did not precisely satisfy the diagnostic criteria. (Tr. 590, 595). Claimant's functional limitations and the degree to which they affected Claimant are as follows: 1) mild restriction of daily living activities; 2) mild difficulties in maintaining social functioning; 3) mild difficulties in maintaining concentration, persistence or pace; 4) no episodes of decompensation. (Tr. 600). Dr. Marinelli noted Claimant worked part-time, provided assistance to his parents, is able to perform personal care without difficult, makes simple foods, does laundry, goes shopping. (Tr. 602). Claimant also reported no problems with memory, completing tasks, understanding, following instructions, or getting along with others. (Tr. 602). Claimant did state that when he is "under too much stress his heart skips." (Tr. 602).

Dr. James W. Bartee reviewed all of Claimant's pertinent medical evidence and found "[t]he assessment based on the PRTF dated 2/26/09 supporting cessation of benefits" should be "affirmed as written." (Tr. 604).

On February 27, 2008, Mr. Gary Farnsworth, a SSA Disability Examiner, reviewed

Claimant's medical records and stated "although Claimant may have discomfort, the evidence shows he is still able to move about and to use his arms, hands and legs in a satisfactory manner. (Tr. 498). Claimant was able to "walk, stand and move about without help and can use his arms and hands for basic grasping and handling." (Tr. 498). Mr. Farnsworth stated that "[a]lthough [Claimant] may have a serious heart condition, it is not severe enough at this time to be considered disabling...and the medical evidence does not show any other disabling condition." (Tr. 498).

A vocational analysis was also performed on February 27, 2008 for Claimant. Claimant's exertion level was determined to be light and he only had postural limitations. (Tr. 499). Claimant's mental limitations were "non-severe" and did not have any mental restrictions. (Tr. 499). It was determined Claimant could perform the work of the following vocations: 1) abrasive sawyer; 2) abrasive-band winder; 3) acid adjuster. (Tr. 499).

On April 16, 2008, Dr. Lakeey performed a case analysis. (Tr. 606). The physician noted "claimant has [a] history of aortic valve disease, s/p aortic valve replacement" but that a "cardiology follow up of Nov. 2007 showed that [Claimant] was overall doing well and clinically had no evidence of heart failure." (Tr. 606). Claimant's "light [Residual functional capacity] set at the initial level" was affirmed. (Tr. 606).

On June 19, 2008, Mr. Earl R. Langley, a Disability Hearing Officer, determined Claimant was not disabled. (Tr. 510). Mr. Langley made the following findings: 1) Claimant's status was post aortic vale replacement; 2) Claimant denies chest pain, shortness of breath or other cardiac symptoms; 3) Claimant's blood pressure is in the normal range; 4) Claimant's pacemaker is functioning well; 4) Claimant does not handle stress well and has concentration

problems when he does not sleep well. (Tr. 504). Claimant has had aortic valve replacement with improvement of his cardiac symptoms but continues to have significant problems with anxiety. (Tr. 505). Claimant refused a prescription for antidepressants. (Tr. 505). Mr. Langley stated there had been medical improvement of Claimant's impairments since the comparison point decision in that Claimant's "cardiac condition has improved with aortic valve surgery and a pacemaker insertion. (Tr. 506). Claimant was found to have a severe impairment in that he "has anxiety...[and] he is on a pacemaker." (Tr. 507). Claimant's impairments do not prevent him from doing past relevant work although "[Claimant] has no relevant work performed at the SGA level in the past 15 years." (Tr. 508). Claimant's impairments do not prevent him from doing other work and he retained the ability to perform light, unskilled jobs such as a batch maker, assembler and stock checker.. (Tr. 508-509).

On August 12, 2008, Dr. James Comerci completed a physical residual functional capacity questionnaire regarding Claimant's impairments. (Tr. 620). Dr. Comerci listed Claimant's symptoms as palpitations, fatigue with any activity, dizziness and concentration issues due to pain. (Tr. 620). Claimant was noted to have "chest pain intermittent," and "severe with physical exertion." (Tr. 620). Claimant's impairments have lasted or could be expected to last at least twelve months. (Tr. 621). Claimant also suffered from depression and anxiety. (Tr. 621). Claimant was noted to be capable of low stress jobs, can walk 1-2 city blocks without rest or pain, and can sit for an hour at one time before needing to get up. (Tr. 621). Claimant is able to stand for 30 minutes before needing to sit down, walk around, etc. (Tr. 622). Claimant can sit for about 4 hours total in an 8-hour working day and can stand/walk a total of about 2 hours in an 8-hour working day. (Tr. 622). Claimant must walk approximately 30 minutes during an 8-hour

working day at 5 minutes each time. (Tr. 622). Claimant also needs to take approximately 1 unscheduled break during an 8-hour working day and the break should be 2 hours to permit Claimant to lie down. (Tr. 622). Claimant can frequently lift and carry less than 10lbs, can occasionally lift 10 lbs, and can never lift/carry more than 20 lbs. (Tr. 623). Claimant can occasionally twist, stoop(bend), crouch and can rarely climb ladders and stairs. (Tr. 623). Claimant was estimated, on average, to be absent from work as a result of his impairments about three days per month. (Tr. 623). Claimant was advised to avoid all hazzards, extreme temperatures, wetness, humidity, noise, dust, fumes, gases or hazards. (Tr. 623).

On January 19, 2009, Dr. Ward K. Chiu reported on his examination of Claimant. (Tr. 608). Dr. Chiu had noted Claimant "denied any significant complaints," "denied any chest pain, tightness, or pressure," "denied any shortness of breath, orthopnea, and paroxysmal nocturnal dyspnea." (Tr. 608). Dr. Chiu found "no significant palpitation, heart racing or skipped beats" but Claimant did state "he had occasional skips in heartbeat...when [Claimant] got tense" (Tr. 608). Dr. Chiu noted Claimant "walks 5 days a week, for 25 minutes each time." (Tr. 608). Dr. Chiu found no evidence of heart failure clinically and that the permanent pacemaker was functioning properly. (Tr. 609).

Dr. James L. Comerci opined on January 22, 2009 that Claimant has significant medical problems that will last an indefinite period of time. (Tr. 619). Dr. Comerci noted Claimant presently seeks treatment on a regular basis. (Tr. 619).

On April 13, 2009, Claimant was examined by Dr. James L. Comerci for a check-up. (Tr. 640). Claimant indicated he was feeling with no new problems. (Tr. 640). Claimant denied any chest pain, shortness of breath, dyspnea on exertion, pedal edema or headache. (Tr. 640).

Claimant's physical exam revealed a regular heart rhythm. (Tr. 640). Claimant's aortic insufficiency remains stable. (Tr. 641). Claimant's echo was good with good function of the prosthetic valve. (Tr. 642).

D.    Testimonial Evidence

Testimony was taken at the hearing held on August 18, 2009 in Wheeling, West Virginia. The following portions of the testimony are relevant to the disposition of the case:

Claimant testified that he was a 51 year old, single male with no children. (Tr. 680). Claimant graduated from Triadelphia High School in 1976 and has one year of college. (Tr. 681).   Claimant testified he was working part time for the Catholic Dioceses in the print and mail room. (Tr. 681).  Claimant stated he works 70 hours a month and "run[s] the mail, make sure the prices are right on the mail...." (Tr. 681).  Claimant stated there is not "very much lifting" involved with his job and he works about 17 ½ hours each week. (Tr. 682).  Claimant indicated that he could not continue his employment if it were full time because Claimant finds "the job stressful and [Claimant] tend[s] to get wore out easily...." (Tr. 682).  Claimant testified he believes he could not work a full-time job because of his anxiety and heart condition. (Tr. 682).  Claimant testified the stressors in his job involve "making sure [Claimant] put[s] the right price and the right mailing on a right envelopes...." (Tr. 683).

Claimant also worked for the Wheeling Park Commission from 1989 to 1991 and then from 2001 to 2006. (Tr. 683).  Claimant's employment titles were housekeeping and then a golf course attendant. (Tr. 683-84).  As a golf course attendant, a full-time position, Claimant "cleaned the carts, wiped the carts off and got them ready–to be used again." (Tr. 684).   As a housekeeper, a part-time position, Claimant was responsible for "taking laundry over to be

cleaned," and "mopping." (Tr. 684). Claimant also previously worked for Ogden Newspapers, in a part-time position, as a stacker of newspapers. (Tr. 685).

Claimant testified he is unable to work full-time because he "basically get[s] wore out too easy." (Tr. 686). Claimant states he gets wore out because of his heart and that he does "have chest pains every once in a while...." (Tr. 686). Claimant has had two heart surgeries to insert and later replace a pacemaker. (Tr. 686). Claimant testified he was being treated by Dr. Chui, a cardiologist, and Claimant sees approximately twice a year. (Tr. 686). Claimant stated his heart "causes [Claimant] to get wore out." (Tr. 687). Claimant suffers from palpitations, Claimant's heart skips almost every day as a result of anxiety, stress and physical exertion. (Tr. 687).

Claimant testified his primary care physician is Dr. Comerci and he has been seeing Dr. Comerci every four months so Dr. Comerci can listen to Claimant's heart. (Tr. 687-88). In addition to Claimant's heart, Claimant testified his anxiety disorder also affects his ability to work. (Tr. 688). While Claimant sees Dr. Comerci for his anxiety disorder, Claimant does not see a therapist, psychologist or psychiatrist. (Tr. 688). Claimant testified his heart and anxiety issues do not affect his ability to sit. (Tr. 688). Claimant testified he could sit approximately 10 to 15 minutes but that Claimant gets "antsy." (Tr. 688-89). Claimant takes Ambien, as prescribed by Dr. Comerci so he can sleep at night. (Tr. 689). Claimant testified his problems affect his ability to stand for a lengthy period of time and Claimant can only stand for approximately 15-20 minutes before having to sit down. (Tr. 689-90). Claimant approximates the total amount of time he can stand in an 8-hour workday to be 2 hours. (Tr. 690). Claimant can walk approximately a half of a mile without having to take a break. (Tr. 690). Claimant testified that those approximates were all estimates. (Tr. 690). Claimant notices his heart skips a

beat when he attempts to lift approximately 20-30 pounds. (Tr. 691). Claimant indicates the heaviest thing he encounters in the mailroom on a daily basis would be about 15 pounds. (Tr. 692). Claimant testified that he does not have problems lifting a gallon of milk but states he "just notice[s] his heart skipping too much" while at work. (Tr. 692).

Claimant described his daily activities as follows: "coming from work usually I just go home and sit on a couch and turn the TV on." (Tr. 692). Claimant testified that his mother attends to the household activities such as cook, cleaning and laundry. (Tr. 693). Claimant's brother cuts the grass and attends to the other outside activities. (Tr. 693). Claimant cannot cut the grass because "it just wears [Claimant] out." (Tr. 693). Claimant testified that his medication for his high blood pressure makes Claimant feel "sluggish all day long." (Tr. 694). Claimant will assist with helping his parents shop. (Tr. 694). Claimant is able to drive and does so approximately 50 miles a week. (Tr. 694). Claimant primarily takes short trips and is unable to take long trips of two hours or more because the drive "just wears on" Claimant and they make him tired. (Tr. 695). Claimant experiences this fatigue everyday and testified that it lasts most of the day. (Tr. 695). Claimant testified he thinks his heart symptoms have gotten worse over the years due to the heart operations, the pacemaker and Claimant's age. (Tr. 695-96).

A vocational expert (hereinafter "VE"), Lawrence Ostrowski, testified at Claimant's hearing. (Tr. 696). The VE questioned Claimant about his previous work as a truck driver. (Tr. 698). Claimant testified he delivered pipe supplies to local plants in the Northern Panhandle in 1993. (Tr. 698). Claimant also worked in a warehouse as a warehouse truck driver. (Tr. 699). The ALJ posed the following hypothetical to the VE regarding Claimant's RFC:

> [L]et me ask you to assume a hypothetical individual of the Claimant's age, educational background and work history who would

be able to perform medium work except could not climb ladders, ropes or scaffolds and should not do any balancing type maneuvers. Shouls not be exposed to environmental pollutants or hazards and should work in a low-stress environment with no production line type of pace or independent decision making responsibilities. Would there be any work in the regional or national economy that such a person could perform?

(Tr. 699).

The VE answered affirmatively and testified that the "work of a dining room attendant, kitchen helper and equipment cleaner existed" in significant numbers. (Tr. 700). The ALJ then reduced the exertional level to light but retained the other limitations and inquired as to whether significant jobs existed which fulfilled these requirements. The VE responded that work, such as a storage facility rental clerk, office helper, and sewing machine operator, existed in significant numbers. (Tr. 700). The VE additionally testified that his testimony was consistent with the *Dictionary of Occupational Titles* (hereinafter "DOT"), with the exception of the sit/stand option posed in the second hypothetical. (Tr. 701). Specifically, the VE testified that the sit/stand options are not defined in the DOT and that the VE's opinion on the need for a sit/stand option was based on the VE having performed a job, having formally analyzed the requirement of doing a job or having become familiar with how a job is performed otherwise. (Tr. 701).

Upon cross-examination by Claimant's attorney, the VE testfiied the jobs identified would not permit a hypothetical individual to lie down at least one time for two hours during an eight-hour working day. (Tr. 701). The VE also testified the identified jobs would not permit an individual to be absent from work unscheduled about three times per month and that if an individual were off task more than 10 percent of a work period on an ongoing basis, that individual would lose the job. (Tr. 702).

E.    Lifestyle Evidence

The following evidence concerning Claimant's lifestyle was obtained at the hearing and through medical records. The information is included in the report to demonstrate how Claimant's alleged impairments affect his daily life:

Claimant described his activities from the time he awoke until going to bed as follows:

> Get up. Eat breakfast, watch some T.V. Usually I work from 8:30am till 12:00 noon. Come home go to library for an hour, go home lay around and watch the (illegible). Help my parents around the house, I work 70 hours a month.

(Tr. 547).

Claimant does take care of his parents by helping them around the house, running a tractor to cut grass as well as the weed-wacker trimming grass. (Tr. 548). Claimant does not take care of any pets . (Tr. 548). Claimant states that his condition affects his sleep because he is too tense during the day so when he lays down, Claimant's heart hits against his chest. (Tr. 548).

Claimant does not have problems with his personal care. (Tr. 548). Claimant does not need any special reminders to take care of his personal needs and grooming. (Tr. 549). Additionally, Claimant does not need help or reminders taking medicine. (Tr. 549). Claimant does prepare his own meals ranging from pizzas and hot dogs to pork and beans and sandwiches. Claimant prepares his meals daily and has not had any changes in his cooking habits since his injury occurred. (Tr. 549).

Claimant is able to run a riding mower, do laundry, iron and clean twice a week and does not need encouragement to do these activities. (Tr. 549). Claimant goes outside everyday and is able to drive a car. (Tr. 550). Claimant shops in stores for groceries, pants, shirts, etc for about one hour twice a week. (Tr. 550). Claimant is able to pay bills, count change, handle a savings

account and can use a checkbook/money order. (Tr. 550).  Claimant's ability to handle money has not changed since his injuries began. (Tr. 551).

Claimant likes to watch the news, go to the library and get on the computer. (Tr. 551). Claimant engages in these activities on average about 4 to 5 times a week and this has not changed. (Tr. 551).  Claimant does not spend time with others but goes to church and the library on a regular basis. (Tr. 551).  Claimant does not need to be reminded to go places and does not need someone to accompany him. (Tr. 551).  Claimant does not have any problems getting along with family, friends, neighbors or others. (Tr. 552).  Claimant's social activities have changed since the injury began in terms of Claimant does not ski anymore. (Tr. 552).

Claimant indicates that his condition affects his lifting, walking and concentrating. (Tr. 552).  Claimant states he "can't concentrate to good...nerves, cannot lift to much...get out of breath, cannot walk real far...get wore out easy, can't lift no more than 50 lbs...get out of breath." (Tr. 552).  Claimant stated he can walk about 15 minutes before needing to stop and rest and must rest about 10 minutes before he can resume walking. (Tr. 552).  Claimant can pay attention for 10 to 15 minutes and does finish what he starts. (Tr. 552).  Claimant follows written instructions well but does not follow spoken instructions very well. (Tr. 552).  Claimant gets along well with authority figures and has not been fired or laid off from a job because of problems getting along with other people. (Tr. 553).  Claimant does not handle stress well but can handle changes in routine. (Tr. 553).  Claimant states he has noticed unusual behaviors in that when he does not sleep well he cannot concentrate and he sometimes gets depressed and "fear runs through" Claimant. (Tr. 553).

Claimant wears glasses and uses them to read, drive, watch television and when working

and on the computer. (Tr. 553). Claimant stated the following: "[w]hen I am under to much stress my heart skips (I can feel it)." (Tr. 554).

### III. The Motions for Summary Judgment

A.    <u>Contentions of the Parties</u>

In support of his Motion for Summary Judgment, Claimant argues the ALJ's decision is not supported by substantial evidence. Claimant first contends that the ALJ failed to afford appropriate weight to Claimant's treating physicians' opinions Drs. Comerci and Chui. Specifically, Claimant states the ALJ should have afforded great weight to Claimant's treating physician, Dr. Comerci, and that the non-examining State Agency opinions are not supported by the record. Claimant also argues the ALJ's credibility determination regarding Claimant's symptoms was improper. Claimant contends the ALJ offered "a blanket statement that the [Claimant's] testimony is not entirely credible, but offer[ed] no further explanation or basis for doing so...." <u>See</u> Pl.'s Mot. for Summ. J., Pg. 10 (Dkt. 11). Claimant requests the Court to reverse the ALJ's and Appeals Council's determinations and that Claimant's benefits be reinstated.

Commissioner asserts two arguments in opposition to Claimant's Motion for Summary Judgment and argues substantial evidence supports the ALJ's finding that Claimant was no longer disabled as of February 1, 2008. First, Commissioner argues the ALJ's evaluation of Claimant's treating physicians' opinions and other medical evidence was proper. Specifically, Commissioner contends Dr. Comerci's conclusory vocational opinion was not supported by Dr. Comerci's own treatment records nor by those of any other medical provider. <u>See</u> Def.'s Mot. for Summ. J., Pg. 7-8 (Dkt. 13). Commissioner argues the ALJ explained that Dr. Comeric's

opinion afforded less weight because it was based on Claimant's subjective allegations, which were already found to be not credible. Id. at 12. Second, Commissioner contends the ALJ's credibility determination was proper and in accord with the regulations because the ALJ properly considered the record as a whole and found it did not reasonably support the intensity and persistence of Claimant's alleged symptoms. Id. at 10-11. Accordingly, Commissioner requests the Court to affirm the ALJ's decision denying Claimant benefits.

B.      Discussion

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3) (2010). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 664-65 (1988); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 2001)). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3).

1.      **Whether the ALJ Properly Evaluated the Treating Physicians' Opinions and Other Medical Records In Compliance With the Controlling Regulations**

All medical opinions are to be considered in determining the disability status of a claimant. 20 C.F.R. §§ 404.1527(b), 416.927(b). Courts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the

applicant; (2) the treatment relationship between the physician and the applicant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527(d)(2) (2010). Courts often accord "greater weight to the testimony of a treating physician" because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). However, "although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." Id. (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam)). The opinion and credibility of claimant's treating physician is entitled to great weight but may be disregarded if there is persuasive contradictory evidence. Evans v. Heckler, 734 F.2d 1012, 1015 (4th Cir. 1984).

Controlling weight may be given only in appropriate circumstances to medical opinions, i.e., opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources, when the opinion is 1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, and 2) not inconsistent with other substantial evidence in the case record. 20 C.F.R. §416.927(d)(2). See Craig, 76 F.3d at 590 (holding that a treating physician's medical opinion must be given controlling weight only when it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record). To decide whether the impairment is adequately supported by medical evidence, the Social Security Act requires that impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. § 423(d)(1), (3); Heckler v. Campbell, 461 U.S. at 461; 20 C.F.R. §§ 404.1508;

Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990).

Affording controlling weight to Dr. Comerci's opinion is inappropriate in this case because the ALJ found the opinion to be inconsistent with other substantial evidence in the case record. Claimant highlights Dr. Comerci's opinion and argues Dr. Comerci's opinion "clearly states that the [Claimant] would not even be capable of performing a reduced range of sedentary work...[and that] these problems [would] last an indefinite period of time." See Pl.'s Mot. for Summ. J., Pg. 5 (Dkt. 11). Claimant contends the ALJ failed to give the "detailed assessment from Dr. Comerci...the appropriate weight" and argues this is in error because a treating physician's opinion "reflects an expert judgment based on the continuing observation of the claimant's condition over the prolonged period of time." Id. at 8-9. While it is true that treating physician's opinions are customarily afforded great weight, controlling weight may be given only when the opinion is 1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, and 2) not inconsistent with other substantial evidence in the case record. 20 C.F.R. §416.927(d)(2).

The ALJ's determination is replete with substantial evidence supporting the ALJ's decision to afford less than controlling weight to Dr. Comerci's opinion. The ALJ explained he rejected Dr. Comerci's opinion contained in the assessment dated August 12, 2008 because it was "based primarily on the [C]laimant's subjective complaints, which the undersigned finds are not fully credible, and are not supported by the objective findings." See ALJ Decision, Transcript Pg. 28. The ALJ went further and detailed that Dr. Comeric and Dr. Chui both reported Claimant's cardiac condition was stable and that Claimant had reported no chest pain or shortness of breath. Additionally, the ALJ stated that Claimant's pacemaker was functioning

well, as determined by Claimant's treating physicians. The ALJ stressed in his decision that the "reports from these sources fail to support the [Dr. Comerci's] report in the assessment form that the Claimant has intermittent chest pain that is severe with physical exertion." Id. The ALJ also declined to afford controlling weight to Dr. Comerci's report in the assessment form due to concerns that the report was inconsistent with other substantial evidence in the case record. Accordingly, Claimant's argument in this regard must fail.

**2. Whether Substantial Evidence Supports a Finding that Claimant's Subjective Symptoms Were Not Entirely Credible**

The Fourth Circuit stated the standard for evaluating a claimant's subjective complaints of pain in Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). Under Craig, when a claimant alleges disability from subjective symptoms, he must first show the existence of a medically determinable impairment that could cause the symptoms alleged. Id. at 594. The ALJ must next "expressly consider" whether a claimant has such an impairment." Id. at 596. If the claimant makes this showing, the ALJ must consider all evidence, including the claimant's statements about his symptoms, in determining whether the claimant is disabled. Id. at 595. While the ALJ must consider the claimant's statements, he need not credit them to the extent they are inconsistent with the objective medical evidence or to the extent the underlying objective medical impairment could not reasonably be expected to cause the symptoms alleged. Id.

The regulations set forth certain factors for the adjudicator to consider to determine the extent to which the symptoms limit the claimant's capacity to work:

> 1) The individual's daily activities; 2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) Factors that precipitate and aggravate the symptoms; 4) Type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate

pain or other symptoms; 5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and 7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. 404.1529(c) and 416.929(c) (2010).

Accompanying factors are provided in SSR 96-7p that the adjudicator must also consider in addition to the objective medical evidence when assessing the credibility of an individual's statements. These factors include medical signs and laboratory findings; diagnosis, prognosis, and other medical opinions provided by medical sources; and statements and reports about claimant's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the claimant's symptoms and how the symptoms affect the individual's ability to work. SSR 96-7p.

"Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (7th Cir. 1984) (citing Tyler v. Weinberger, 409 F. Supp. 776 (E.D. Va. 1976)). "Because hearing officers are in the best position to see and hear the witnesses and assess their forthrightness, we afford their credibility determinations special deference." See Nelson v. Apfel, 131 F.3d 1228, 1237 (7th Cir. 1997). "We will reverse an ALJ's credibility determination only if the claimant can show it was 'patently wrong.'" Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000) (citing Herr v. Sullivan, 912 F.2d 178, 181 (7th Cir. 1990)).

Claimant's argument regarding the ALJ's credibility determination must fail. Claimant

argues the ALJ provided nothing more than a "blanket statement that the [Claimant's] testimony is not entirely credible, but offers no further explanation or basis for doing so–only mentioning harmless daily activities, such as his preparation of simple meals, laundry, ironing, driving a car, going to church and the library, shopping for one hour two (2) times per week; and working a part-time job." See Pl.'s Mot. for Summ. J., Pg. 10 (Dkt. 11). Claimant alleges these activities are "consistent with a sedentary RFC finding which...would still result in continued disability for the [Claimant]." Id. Contrary to Claimant's assertion, the ALJ's decision as well as the record illustrates that the ALJ evaluated Claimant's symptoms in accordance with the two-part test in Craig and the SSR 96-7p factors. Under Craig, the ALJ first found that "Claimant has medically determinable impairments that could reasonably be expected to cause some of the symptoms described, and the [ALJ] believes that the Claimant does experience some palpitations and fatigue from time to time...." See ALJ Decision, Transcript Pg. 27. The ALJ, however, did not find Claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were to the frequency and severity alleged. Id. Second, the ALJ "expressly" considered whether Claimant "has such an impairment" by devoting nearly three pages of analysis to explain his reasoning supporting his finding. Id. at 25-27.

In accordance with the factors set forth in SSR 96-7p, the ALJ examined the objective medical evidence, Claimant's daily activities, Claimant's work history and Claimant's statements concerning the limiting effects of his symptoms. First, the ALJ examined Claimant's complaints related to "residuals of his heart surgeries" and determined that while Claimant alleged that he continued to be disabled due to residuals of his heart surgeries (*i.e.* shortness of breath), that Claimant denied any chest pain or shortness of breath when seen by Dr. Chui and

when seen by Dr. Comeri. (Tr. 26).

The ALJ also considered Claimant's daily activities and explained his reasoning as to why the ALJ believed Claimant's allegations lacked veracity. The ALJ explicitly states that Claimant's activities detailed in the function report and testified to at the hearing are also inconsistent with Claimant's complaints of disabling pain and functional limitations. See Transcript, Pg. 26. The ALJ's consideration of Claimant's daily activities were but one factor considered. The ALJ also accentuated the inconsistencies in the evidence of record in relation to Claimant's actions and statements to medical providers. For example, Claimant alleged shortness of breath but when seen by treating physicians, Claimant denied such symptoms. Lastly, the ALJ considered the gaps in Claimant's medical treatment to reach a determination that Claimant's alleged symptoms were not consistent with a condition which would render Claimant unable to sustain consistent employment. The ALJ highlighted that Claimant "complained of difficulty with anxiety...[but] failed to document any ongoing mental health treatment." Transcript, Pg. 27. Therefore, the Court finds that the ALJ had more than a mere scintilla of evidence and appropriately discredited Claimant's subjective statements regarding his pain and symptoms.

## IV. Recommendation

For the foregoing reasons, I recommend that:

1.      Claimant's Motion for Summary Judgment be **DENIED** because the ALJ properly evaluated the treating physician's reports and correctly assessed Claimant's credibility.

2.      Commissioner's Motion for Summary Judgment be **GRANTED** for the same reasons.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days of the date of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

DATED: July 22, 2011                                    /s/ *James E. Seibert*
                                                        JAMES E. SEIBERT
                                                        UNITED STATES MAGISTRATE JUDGE